IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| EDWARD F. DANIEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:06-0019 |
| v. | ) | Judge Nixon / Knowles |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security which found that Plaintiff was not disabled and which denied Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket Entry No. 9. Plaintiff's Motion seeks remand or reversal. *Id.* Defendant has filed a "Motion for Entry of Judgment Under Sentence Four, 42. U.S.C. § 405(g), With Remand to Defendant," seeking remand. Docket Entry No. 15. Plaintiff has filed a "Responsive Memorandum in Opposition to Defendant's Motion for Remand, and in Support of Outright Reversal of the Commissioner's Decision." Docket Entry No. 17. In his "Responsive Memorandum in Opposition...," Plaintiff ceases to seek remand, and instead, solely seeks reversal. *Id.* Defendant has filed an "Opposition to Plaintiff's Response to the Commissioner's Motion to Remand," arguing that remand alone is warranted. Docket Entry No.

1

19.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be GRANTED as unopposed, and that this action be REMANDED.[1]

## I. INTRODUCTION

Plaintiff filed his application for Disability Insurance Benefits on January 31, 2003, alleging that he had been disabled since November 15, 2002, due to multilevel degenerative disc disease, severe C5-6 and L5-S1 syringohydromyelia, chronic pain disease, and emotional problems. *See, e.g.,* Docket Entry No. 7, Attachment ("TR"), pp. 13, 59. Plaintiff's application was denied both initially (TR 22-23), and upon reconsideration (TR 24-25). Plaintiff requested (TR 32) and received (TR 39-50) a hearing. Plaintiff's hearing was conducted on January 31, 2005, by Administrative Law Judge ("ALJ") Linda Gail Roberts. TR 389. Plaintiff and Vocational Expert, Gordon Doss, appeared and testified. *Id.*

On July 27, 2005, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 12-19. Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

---

[1]Although Plaintiff also seeks reversal with an immediate award of benefits, for the reasons to be discussed herein, such reversal is not warranted.

2

Case 1:06-cv-00019 Document 22 Filed 10/10/08 Page 2 of 13 PageID #: 69

3. The claimant's impairments of degenerative disc disease of the lumbar and cervical spines, bilateral shoulder impingements syndrome, and bilateral medial epicondylitis are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: lift and carry fifteen pounds occasionally and ten pounds frequently; he can stand or walk for four hours in an eight hour workday, and stand or walk for one hour without interruption; he can sit for four hours in an eight hour workday, and sit for one hour without interruption; he has very little or no ability to climb, kneel, crouch, stoop, balance or crawl; his abilities to reach, handle, feel, and push or pull are affected by his impairments; and he has the environmental restrictions of heights, vibration, moving machinery, temperature extremes, and humidity.

7. The claimant's past relevant work as minister, insurance agent and insurance manager did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR § 404.1565).

8. The claimant's medically determinable impairments do not prevent the claimant from performing his past relevant work.

9. The claimant is not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 404.1520(f)).

TR 18.

On October 12, 2005, Plaintiff requested review of the hearing decision. TR 7-8. On January 13, 2006, the Appeals Council issued a letter declining to review the case (TR 4-6),

thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id*.

## II. ANALYSIS

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270,

4

273 (6th Cir. 1997)). If the Commissioner, however, did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which

5

significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with

---

[2]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. The Case At Bar

Plaintiff alleges disability due to cervical disc herniation, degenerative disc disease, migraine headaches, and depression. *See, e.g.,* TR 31, 45, 54, 63.

Plaintiff contends that the ALJ erred, 1) by ignoring the opinions of two treating physicians who have provided opinions that Plaintiff is disabled, 2) by rejected the disabling opinion of the treating pain management specialist for improper reasons, and 3) by rejecting Dr. Cochran's opinions regarding Plaintiff's mental impairment. Docket Entry No. 10. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id*.

Defendant likewise contends that, pursuant to 42 U.S.C. § 405(g), this action should be remanded so that the ALJ can reconsider the opinions of Plaintiff's treating physicians and redevelop Plaintiff's residual functional capacity in order to determine whether Plaintiff is capable of returning to his past work. Docket Entry No. 16.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

7

Case 1:06-cv-00019    Document 22    Filed 10/10/08    Page 7 of 13 PageID #: 74

> reversing the decision of the Commissioner of Social Security,
> with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

Both Plaintiff and Defendant concur that the ALJ in the case at bar failed to adequately provide her reasoning for discounting the opinions of Plaintiff's treating physicians, as the Regulations require her to state. Docket Entry Nos. 10, 17, 19. Plaintiff argues that the appropriate remedy is to order an immediate grant of benefits, while Defendant argues that the evidence is not so overwhelming or certain so as to warrant an immediate grant of benefits. *Id.* Defendant maintains that the opinions of Plaintiff's treating physicians should not be accepted blindly, and that, accordingly, remand is appropriate to allow the ALJ to consider the opinions of Plaintiff's treating physicians and articulate the weight given to them. Docket Entry No. 19. Defendant also contends that remand would allow Plaintiff to submit any additional or updated information concerning his impairments. *Id.*

The ALJ in the case at bar reviewed the record as follows:

> Dr. Robert T. Chochran stated in a deposition taken on October 5, 2004 that he had treated the claimant since December 17, 2002 for chronic pain. He said that the claimant had a history of back pain,

as well as being confused, fatigued, and inattentive. He stated that the claimant had experienced neck and arm pain since February 2002. The claimant reported that his neck pain worsened, and that he had pain "all over." Dr. Cochran also stated that upon examination, the claimant did not exhibit pain behaviors, reflexes were brisk, there were no pathologic reflexes and that his examination was basically normal. He said that as he treated the claimant, his progress was "up and down," but that overall he did "very, very well." (Exhibit 10F).

Dr. Cochran further stated that the claimant had bipolar disease. He said that the claimant had the characteristics of depressive illness including anhedonia, appetite disturbance, sleep disturbance, alteration of level of activity, decreased energy, feelings of guilt and worthlessness, and difficulty concentrating. He said that the claimant had the characteristics of mania including hyperactivity, pressured speech, flight of ideas, insomnia, and easy distractibility (Exhibit 10F).

Dr. Cochran reported that since he had treated the claimant he had improved, but that he was not well. He said that the would have trouble with stress, he may not be reliable, he would have difficulty dealing with the public, and he would be unpredictable. He also reviewed the physical capabilities evaluation he signed in 2003, and said that there were no changes (Exhibit 10F).

Dr. Cochran reported in October 2003 that the claimant was able to lift and carry fifteen pounds occasionally and ten pounds frequently. He said that the claimant could stand or walk for four hours in an eight hour workday, and stand or walk for one hour without interruption. He stated that the claimant could sit for four hours in an eight hour workday, and sit for one hour without interruption. Dr. Cochran further reported that the claimant had very little or no ability to climb, kneel, crouch, stoop, balance or crawl. He said that the claimant's abilities to reach, handle, feel, and push or pull were affected by his impairments. He also stated that the claimant had the environmental restrictions of heights, vibration, moving machinery, temperature extremes, and humidity. He reported that the claimant was unable to sustain work activity for eight hours per day, five days per week for fifty weeks per year on a continuing and sustained basis (Exhibit 10F, pp. 71-73).

A magnetic resonance imaging (MRI) scan of the cervical and thoracic spine performed on February 15, 2002 showed a

9

contained disc herniation on the left at C7-T1, a syrinx involving the lower cervical, upper and mid-thoracic cord with no enhancing spinal cord lesions, and no cord compression or cord impingement within the thoracic spine (Exhibit 1F).

An MRI of the lumbar spine performed on November 25, 2002 revealed L5-S1 severe degenerative disc disease with a mild to moderate diffuse spondylitic disc bulge and without thecal sac or nerve root compression. An MRI of the cervical spine performed on this date showed mild central disc bulges at C3-4, C4-5 and C6-7, as well as a mild to moderate central disc bulge at C5-6. It also revealed a mild to moderate left paracentral disc protrusion at C7-T1, and lower cervical myelomalacia (Exhibit 3F).

Dr. Bruce A. Davis stated on March 27, 2003 that the claimant was able to lift and carry twenty pounds occasionally and ten pounds frequently. He said that he could stand or walk for six hours in an eight hour workday, and that he could sit for six hours in an eight hour workday. He also stated that the claimant was limited in his ability to squat and climb, and that he was limited around heights (Exhibit 4F).

Dr. George W. Bounds, Jr., a state agency medical consultant, stated on April 9, 2003 that the claimant was able to lift and carry twenty pounds occasionally and ten pounds frequently, he could stand or walk for six hours of an eight hour workday, and he could sit for six hours of an eight hour workday. He also said that the claimant could frequently climb, balance, stoop, kneel, crouch and crawl (Exhibit 5F).

The claimant also has a history of bilateral shoulder pain and bilateral elbow pain. He was diagnosed with impingement syndrome with acromioclavicular joint synovitis and underwent surgery on the right shoulder. On May 22, 2003, the claimant reported that this shoulder was "doing very well" and "much better than expected." Dr. Jeffrey Adams stated that the claimant had good active motion and good strength of the shoulder. On August 7, 2003, the claimant underwent an arthroscopy of the left shoulder with acromioclavicular resection and subacromial decompression. The claimant's elbow pain was diagnosed with medial epicondylitis bilaterally (Exhibits 6F and 8F).

At the hearing, the claimant testified that he had not worked since his alleged onset date of November 15, 2002. He said that he

underwent his first back surgery in 1998. He reported that he had undergone five surgeries. Two surgeries on his lower back, one surgery on his cervical spine in early 2002, and surgeries on each shoulder in spring of 2003. He said that he missed a lot of work, he lost control of his emotions, and he lost control of his bladder. He reported that his pain was intense and unpredictable. He stated that some days it was controlled, but that other days he could not function at all. He said that following his second surgery, the pain was everywhere in his body. He reported that the pain was in his arms down to his fingers. He said that he had been treated by Dr. Robert Cochran since December 2002 of [*sic*] January 2003 for pain management. He reported that his doctors also deal with his emotional problems. He reported that he had recently had a conflict with his son, and that he ended up in deep depression. He said that he did not have any hobbies. He also stated that he had difficulty concentrating.

He stated that he must stand after sitting for fifteen minutes. He said that he could stand still for maybe about thirty seconds, and that he could stand for four or five minutes if moving. He reported that he could walk two tenths of a mile in pain, and that he could walk for fifteen minutes on a treadmill. He said that he could not keep up walking two tenths of a mile and back after four or five days, and that he could not continue with the treadmill.

The claimant stated that he was up three or four times per night with medication. The claimant said that he could lift twenty to twenty-five pounds once, and that he did not know how much he could lift repeatedly. The claimant stated that he read a lot, and that he read the Bible or other things related to the Bible. He reported that he could not hold a book, and that he put it on a pillow to read. He said that he performed some household chores such as loading the dishwasher in increments. He stated that his hands would throb and burn, and that this would take him all morning. He said that he drove occasionally, and that his father-in-law drove him to the hearing. He reported that he had to get out several times when riding.

TR 14-16.

As was noted above, the Court can reverse the ALJ's decision and award benefits if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is

11

strong and evidence to the contrary is lacking. *Mowery*, 771 F.2d at 973. While there is evidence in the case at bar supporting Plaintiff's claims, there is also evidence to the contrary, such that remand, not outright reversal is warranted. For example, although Plaintiff reported to Dr. Cochran that his neck pain had worsened, and that he had pain "all over," Dr. Cochran stated that upon examination, Plaintiff did not exhibit pain behaviors, his reflexes were brisk, there were no pathologic reflexes, and that his examination was basically normal. Dr. Cochran also said that over the course of treating Plaintiff, Plaintiff's progress had been "up and down," but that overall he had done "very, very well."

Because the undersigned cannot find that the ALJ's decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking, the undersigned recommends that this action be remanded to allow the ALJ to comply with the Regulations by reconsidering the opinions of Plaintiff's treating physicians and articulating the weight given to them.

## IV. RECOMMENDATION

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be GRANTED as unopposed, and that this action be REMANDED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in this Report in which to file any response to said objections. Failure to file specific objections within ten (10) days of service of this Report and

Recommendation can constitute a waiver of further appeal of this Recommendation. *See*

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

                                       E. CLIFTON KNOWLES
                                       United States Magistrate Judge

Case 1:06-cv-00019   Document 22   Filed 10/10/08   Page 13 of 13 PageID #: 80